IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DIRK S. ADAMS,<br><br>  Plaintiff,<br><br>vs.<br><br>MIDORI E. GISSELL, TRENT JOHNSON, LARRY JOHNSON, *et al.*,<br><br>  Defendants. | CV 20-135-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiff Dirk S. Adams ("Adams") brings this action against Midori E. Gissell, Trent Johnson, Larry Johnson, John Does 1-2, and Jane Does 1-2 (collectively, "Defendants"), alleging various causes of action relating to personal and real property in Park County, Montana.  (Doc. 1.)

Presently before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1]  (Doc. 15.)  The motion has been referred to the

---

[1] The Court notes that Defendants' motion fails to adhere to Local Rule 7.1(c) and (d).  L.R. 7.1(c)(1) and (2) requires, *inter alia*, the moving party to state whether the opposing party has been contacted and whether they oppose or object to the motion.  Failure to comply with this rule "may result in summary denial of the motion."  L.R. 7.1(c)(4).  In addition, L.R. 7.1(d)(1)(A) requires an opposed motion to "be accompanied by a brief in support" that is "filed separately from the motion."  Defendants filed a combined motion and brief.  (Doc. 15.)

undersigned under 28 U.S.C. § 636(b)(1)(B). The motion is fully briefed and is ripe for the Court's review. (Docs. 15, 18, 20.) For the following reasons, the Court recommends the motion be DENIED.

## I. Background

The events underlying Adams' allegations ultimately derive from the renting a bunkhouse on his Montana property ("Property") to Defendant Midori E. Gissell ("Gissell"), who is the daughter of Adams' wife, Miki Gissell ("Miki"). Adams and Miki are currently undergoing a marital dissolution.

Adams alleges that in return for heavily discounted rent and free utilities, Gissell was to serve as a caretaker of the Property's main house and Adams' pets; access and use of the Property were limited to her caretaking activities. Gissell also worked for Adams as the manager of one of his businesses, the Wilsall General Store, from sometime in 2017 through the first week of September 2018, when he terminated her employment. Adams alleges he also evicted her from the

---

While these technicalities provide instant grounds for denial, the Court finds in the interest of judicial economy that ruling on the merits is a preferred course. However, adherence to the Local Rules is required.

The Court further notes that Defendants errantly move to dismiss Adams' Complaint under Rule 12(h)(3). (Doc. 15 at 1.) This rule is inapplicable, as it relates to waiver of defenses or objections not properly raised in responsive pleadings and reflects that subject matter jurisdiction can never be waived. The Court will treat the instant motion as a proper Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

Property and ended her duties as its caretaker, apparently to no effect.  Adams alleges Gissell never vacated, and her boyfriend, Defendant Trent Johnson ("Johnson"), who had moved in with Gissell sometime in 2018, remained with her on the Property.

Adams and Miki moved to Cambridge, Massachusetts in January 2019, leaving Gissell and Johnson on the Property.  Gissell and Johnson's subsequent access, use, and treatment of the Property are the bases of Adam's causes of action.  Adams brought this suit on September 8, 2020, alleging breach of contract, trespass to land, trespass to chattel, conversion, invasion of privacy, tortious interference with contractual relations, defamation, gross negligence, and negligence.  Adams invoked federal jurisdiction based on diversity of citizenship.  Adams alleges in his complaint that he is a resident of Cambridge, Massachusetts and Defendants are residents of Montana.

Defendants now move to dismiss, arguing the Court lacks proper subject matter jurisdiction because Adams is also a citizen of Montana, and therefore, complete diversity does not exist.  (Doc. 15.)

## II.  Legal Standard

### A.  Rule 12(b)(1) – Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the action.  A Rule 12(b)(1) motion may be a facial or

factual challenge. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Savage v. Glendale Union High School, Dist. No. 205, Maricopa Cty*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In a facial challenge, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. By contrast, a factual challenge substantively disputes the factual allegations invoking federal jurisdiction. *Id.*

When considering a factual attack, the Court may look to evidence beyond the complaint "without having to convert the motion into one for summary judgment." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The Court also need not presume the truthfulness of the plaintiff's allegations. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2; *Safe Air*, 373 F.3d at 1039; *Wolf*, 392 F.3d at 362. Factual disputes must be resolved in favor of the plaintiff. *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (citing *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir.1996)).

B.   **Diversity Jurisdiction**

Federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

and is between citizens of different States." 28 U.S.C. § 1332(a)(1). The element of diversity of citizenship "requires complete diversity between the parties – each defendant must be a citizen of a different state from each plaintiff." *Diaz v. Davis* (*In re Digimarc Corp. Derivative Litig.*), 549 F.3d 1223, 1234 (9th Cir. 2008). A person's citizenship is determined by his or her state of domicile, not residence. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* Any change in domicile requires physical presence in a new location and the intent to remain there indefinitely. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

Domicile is determined as of the time the lawsuit is filed. *Id.* The determination of a person's domicile involves a number of factors, including: "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Id.* No single factor is controlling. *Id.* Domicile is evaluated in terms of "objective facts," and "statements of intent are entitled to little weight when in conflict with facts." *Id.* (citing *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)). As the party asserting diversity jurisdiction, the plaintiff bears the

burden of proving its existence. *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008); *Lew*, 797 F.2d at 749.

## III. Discussion

Defendants mount a factual challenge to Adams' jurisdictional allegations and attach six exhibits in support. (Doc. 15 at 7; *see* Docs. 15-1 – 15-6.) Defendants argue that the exhibits show Adams' own statements and declarations made in other court proceedings conflict with the jurisdictional allegations made in the instant Complaint, hence diversity of citizenship does not exist. (*Id.*) Specifically, in two different court filings in May and June 2020 Adams stated that he was a rancher outside Wilsall, Montana and living at 729 Shields River Road, Wilsall, Montana. (Doc. 15-2, 15-3.) In another filing in May 2020, Adams stated he was a rancher outside of Wilsall, Montana and the he was "a U.S. Citizen and a Montana resident domiciled in Park County, Montana." (Doc. 15-4.) Finally, in opposing Miki's petition for possession of their home outside of Wilsall in the dissolution proceeding, Adams responded in a pleading on August 10, 2020 that "wife has no claim to the ranch house where husband has resided for 35 years." (Doc. 15-5.)

Adams responds that he established citizenship in Massachusetts and proffers exhibits and a declaration[2] in support. (Docs. 18 at 3, 4-5; 18-1 – 18-6; 19.) Adams acknowledges that he was once domiciled in Montana, and he had an ownership interest in a ranch near Wilsall and other businesses in the area. (Doc. 19 at 2-3.) Nevertheless, he states he has either disposed of, or is in the process of disposing of, substantially all of his property and assets in Montana, with the exception of a ranch house, which he intends to keep as a summer vacation home. (*Id.* at 3.)

Adams declares he moved to Cambridge, Massachusetts in January 2019, and decided to make it his domicile in August 2019. (*Id.* at 4.) He licensed his vehicle there in Fall 2019 and rented an apartment in Cambridge through May 2020. (*Id.* at 4, 6.) He then moved to another nearby apartment in Cambridge, and he also leased office space there from August 2020 through 2021. (*Id.*) He states that he is working on various projects with other individuals and organizations in the Boston area. (*Id.* at 5.)

Adams has traveled back to Montana on several occasions since January 2019 for court appearances in connection with the dissolution, to wrap up his

---

[2] It appears that Adams' intended his Declaration to serve the dual purpose of supporting his response to the instant motion as well as a "Cross Motion pursuant to FRCP 12(f) to strike the last paragraph of page two and all of page three of defendants' Motion to Dismiss as irrelevant." (Doc. 19 at 1.) No such motion has been filed.

business affairs, and for a medical procedure. (*Id.* at 5.) The medical procedure itself required that he stay in Montana for 60 days. (*Id.*) He also maintains a post office box in Wilsall to receive mail while he is in Montana. But Adams estimates he has lived in Cambridge 80 percent of the time from January 2019 through November 2020. Adams emphasizes that he always returned to Massachusetts from Montana during ongoing divorce proceedings, despite being in the high-risk group (age) for Covid-19 susceptibility. (*Id.* at 6.) He argues that "[t]here is no explanation for his repeated return to Massachusetts, in spite of the airline covid risk, but for his intention to make Massachusetts his domicile." (*Id.*)

Adams also "banks with a Massachusetts financial institution," and receives mail there while he is in Cambridge. (*Id.* at 6-7, FN3.) He also filed a Massachusetts state income tax return for 2019. (Doc. 18-5.) Adams also states that he has initiated the process for obtaining a Massachusetts drivers license, but it has been extremely difficult to complete the process under the state's COVID restrictions. (*Id.*) He points out, however, that he has completed all of the "on-line components" necessary to obtain his Massachusetts driver's license. (*Id.*) Adams admits that he maintained his Montana voter registration, stating it was "far simpler and far safer" to do so for the 2020 election cycle. He believes, however, that he can register to vote in Massachusetts once he completes his driver's license process. (*Id.* at 7.)

Courts must presume that a "domicile is not lost until a new one is acquired." *Lew*, 797 F.2d at 750. Adams was clearly domiciled in Montana prior to the filing of this action. Thus, a change in Adams' domicile requires physical presence in Massachusetts and the intent to remain there indefinitely. *Id.*

The Court finds the evidence is sufficient to establish that Adams changed his domicile to Massachusetts prior to filing this action on September 8, 2020. In making this finding, the Court has considered Adams' declaration, in which he attests that he decided to change his domicile to Massachusetts in August 2019, one year prior to the filing of this action. While his declaration of intent is certainly not conclusive, it is supported by his course of conduct. He attests that he has spent approximately 80 percent of his time from January 2019 to November 2020 in Massachusetts. He also worked, banked, and registered a vehicle there, and filed a Massachusetts state tax return. While he continued to own property in Montana, he had divested a substantial portion of his property and business interest in the state, and only intended to keep a house in Montana for a summer vacation home. He has also initiated the process of obtaining a Massachusetts' drivers' license, inhibited only by the pandemic restrictions. While he was registered to vote in Montana, he states his belief that he will be able to change his voter registration to Massachusetts once he completes his driver's license requirements.

These factors support the conclusion that he was domiciled in Massachusetts in September 2020.

The evidence submitted by Defendants do not alter that conclusion. The fact that he stated he was a living in Wilsall, Montana in court pleadings on three different occasions in May and June of 2020, does not establish that he was domiciled in Montana. As discussed above, citizenship is determined by a person's domicile, not their state of residence.[3] A person's domicile is their permanent home – where they reside and intend to remain or to which they intend to return. *Kanter*, 265 F.3d at 857. "A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id*. Here, Adams did reside in Montana for an estimated 20 percent of the time during this period to take care of matters in the state, including the ongoing dissolution proceeding. But while he resided in Montana at various times after 2019, his conduct demonstrates that he planned to return to Massachusetts with the intention to remain in that state.

Additionally, Adams' statement in a pleading in August 2020 that he had lived in his home near Wilsall for 35 years does not show he was domiciled in

---

[3] In one complaint, Adams did state he was "domiciled in Park County, Montana." (Doc. 15-4.). He maintains that he discovered this was an error, however, and states he dismissed that complaint before the defendant answered. (Doc. 18 at 4-5; 18-6.)

Montana at the time.  The statement appears to have been made in response to Miki's efforts to take possession of their house in Montana.  The statement is made in conjunction with the assertion that he had lived in the house for 25 years longer than Miki, and had a superior right to possess the property.  It does not show that he was residing in Montana with the intent to remain in the state.

On balance, the Court is satisfied that Adams intended to stay in Massachusetts indefinitely and acquired a new domicile there prior to filing this action.

## IV.   Conclusion

The Court finds Adams has met his burden and has shown diversity between parties.  Therefore,

IT IS RECOMMENDED that Defendants' Motion to Dismiss (Doc. 15) be DENIED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or

/ /

objection is waived.

    DATED this 1st day of July, 2021.

                                                             _____
                                                             TIMOTHY J. CAVAN
                                                             United States Magistrate Judge